## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| **CYNTHIA L. JENKINS, on behalf of herself and all others similarly situated, ADA HOWARD, and SANDRA LOGUE,** ) ) ) ) | **CASE NO. 8:06CV743** |
| ) | |
| **Plaintiffs,** ) | |
| ) | **MEMORANDUM AND ORDER ON** |
| **vs.** ) | **MOTION FOR SUMMARY** |
| ) | **JUDGMENT** |
| **GENERAL COLLECTION CO.,** ) **MARK D. STELK and RICHARD E. GEE,** ) | |
| ) | |
| **Defendants.** ) | |

This Matter is before the Court on the Motion for Summary Judgment of Defendants General Collection Co. ("GCC") and Mark D. Stelk ("Stelk")(Filing No 103), in which Defendant Richard E. Gee ("Gee") has joined (Filing No. 119). For the reasons that follow, the Motions will be denied.

### FACTUAL AND PROCEDURAL HISTORY

The following facts, properly presented by the Defendants with pinpoint citations to the evidentiary record (Defendants' Brief, Filing No. 104, pp.3-8), are not disputed by the Plaintiffs (Plaintiffs' Brief, Filing No. 112, pp. 13-15).

Plaintiff Cynthia Jenkins ("Jenkins") obtained a credit card account with First USA, and used the credit card to purchase merchandise. She became delinquent in her payments on the First USA account and, ultimately, the account was "charged off" by the creditor. The account was assigned and sold to a debt purchaser known as Unifund, who in turn assigned and sold the account to Collins Financial, who in turn assigned and sold the account to GCC. Through its counsel, Gee, GCC commenced suit against Jenkins in

Douglas County, Nebraska, on or about November 1, 2004, seeking $5,795.54[1] plus prejudgment interest at a rate of six percent.  In response, Jenkins wrote a letter to the Douglas County Clerk of Court claiming that her credit card account was closed as of February 1, 2001; that the account had become "seriously delinquent" as of September 2000; and that the statute of limitations had expired.  Jenkins later obtained lawyers to defend the collection action, and they filed an affidavit signed by Jenkins alleging that she did not make any payments on the account with First USA "since before September of 2000."  The Douglas County Court granted Jenkins a summary judgment and dismissed the action.  GCC has obtained documents, which Jenkins cannot rebut, demonstrating that Jenkins in fact made six payments on the subject debt in 2001-02, with one check dated February 3, 2002.  Accordingly, GCC has moved to re-open the county court collection action.

Plaintiff Sandra Logue ("Logue") obtained a credit card from BankFirst; used the card to make purchases; and failed to make payments on the account.[2]  The account was assigned and sold by BankFirst's successor to Shekinah, Inc., who in turn assigned and sold the account to GCC.  GCC, again through counsel, Gee, filed suit against Logue in Douglas County, Nebraska, on or about April 3, 2006, seeking $1,418.99 plus interest at the rate of 12 percent.  The Douglas County Court entered a judgment against Logue;

---

[1]  GCC describes the $5,795.54 as the "original amount" of Jenkins's debt, while Jenkins asserts that the $5,795.54 includes additional charges such as over limit fees, late fees, and interest, and therefore should not be described as an "original amount."

[2]  While Logue denies recollection of the specific credit card account, she acknowledges that "it is possible," and she has no evidence to rebut or dispute GCC's allegations.  (Plaintiffs' Brief, Filing No. 112, p.14, ¶¶ 10-12.

-2-

Logue did not appeal from the judgment; and Logue has made some payment toward the judgment.

Plaintiff Ada Howard obtained a Providian Visa Card and a First Consumer Card and failed to make payments on those accounts when due. The Providian account was assigned and sold to Arrow Financial Services, L.L.C., who in turn assigned and sold the account to Collins Financial Services, Inc., who in turn assigned and sold the account to GCC. The First Consumers account was assigned and sold to MRC Receivables Corporation, who in turn assigned and sold the account to Collins Financial Services, Inc., who in turn assigned the account to GCC. GCC, again through counsel, Gee, brought suit against Howard in Douglas County, Nebraska, on or about October 31, 2005, and obtained a judgment[3] against Howard for amounts due on both accounts, including prejudgment interest at a rate of 12 percent. Howard did not appeal from the judgment and has made some payment toward the judgment.

On December 5, 2006, the Plaintiffs brought this action against GCC, GCC's President, Stelk, and Gee, alleging violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"), and the Nebraska Consumer Protection Act, Neb. Rev. Stat. § 59-1601 *et seq.* ("NCPA"). In summary, the Plaintiffs have alleged that the Defendants engaged in routine practices of filing lawsuits and attempting to collect judgments on time-barred debts, and misrepresenting the nature and character of the

---

[3] While the parties' briefs don't specify the sums of money at issue, the Plaintiffs' Second Amended Complaint (Filing No. 63) indicates that GCC sued for $3,045.30 on the Providian account and $608.15 on the First Consumer account, and ultimately obtained a judgment against Howard in the amount of $5,274.71. *Id.* ¶¶ 36, 37, 43.

debts by pleading that the consumers are indebted for "materials and services" when attempting to collect unauthorized charges.[4]

The Plaintiffs seek actual damages, injunctive relief, declaratory judgment, statutory damages and other relief on their own behalf, and also ask this Court to certify two classes and two subclasses of consumers that they seek to represent: (1)(a) Nebraska residents who have been sued by GCC on time-barred consumer debts one year before the filing of the Complaint up to the date of class certification; (1)(b) Nebraska residents who have been sued by GCC on time-barred consumer debts four years before the filing of the Complaint up to the date of the class certification; (2)(a) Nebraska residents who have been sued by GCC on consumer debts including amounts in excess of the original principal debt, *e.g.*, attorney fees, late fees, finance charges, or prejudgment interest, one year before the filing of the Complaint through the date of class certification; and (2)(b) Nebraska residents who have been sued by GCC on consumer debt including amounts in excess of the original principal debt, *e.g.*, attorney fees, late fees, finance charges, or prejudgment interest, four years before the filing of the Complaint through the date of class certification. The Plaintiffs' request for class certification was denied without prejudice to reassertion following the Court's ruling on the pending Motion for Summary Judgment. (See Filing Nos. 67, 109, 111).

Defendants contend that summary judgment should be granted in their favor because (1) Logue's and Howard's claims are a collateral attack on state court judgments

---

[4]15 U.S.C. § 1692f(1) prohibits "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

and barred by the doctrine of *res judicata*, (2) Logue's and Howard's claims are barred by

the *Rooker-Feldman* Doctrine, (3) statements made by the Defendants in the collection

actions are protected by the litigation privilege and the Defendants are absolutely immune

from suit, (4) the collection actions were based on written contracts with five-year statutes

of limitations and were not time-barred, (5) GCC was entitled to seek prejudgment interest

and fees in the collection actions under Nebraska law, and (6) the NCPA does not govern

the content of state court pleadings, such as collection actions.

## STANDARD OF REVIEW

Summary judgment is proper if the evidence, viewed in the light most favorable to

the nonmoving party, demonstrates no genuine issue of material fact exists and the moving

party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c);  *Cordry v. Vanderbilt*

*Mortg. & Fin., Inc.*, 445 F.3d 1106, 1109 (8th Cir. 2006) (quoting *Bockelman v. MCI*

*Worldcom, Inc.*, 403 F.3d 528, 531 (8th Cir. 2005)).  The proponent of a motion for

summary judgment "bears the initial responsibility of informing the district court of the basis

for its motion, and identifying those portions of 'the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any,' which it believes

demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*,

477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  The proponent need not,

however, negate the opponent's claims or defenses.  *Id.* at 324–25.

In response to the proponent's showing, the opponent's burden is to "come forward

with 'specific facts showing that there is a genuine issue for trial.'"  *Matsushita Elec. Indus.*

*Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)).  A

"genuine" issue of material fact is more than "some metaphysical doubt as to the material facts." *Id.* at 586.

"[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "If the evidence is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Id.* at 249–50 (citations omitted).

Summary judgment is "properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp.*, 477 U.S. at 327.

## THE FAIR DEBT COLLECTION PRACTICES ACT ("FDCPA") AND THE NEBRASKA CONSUMER PROTECTION ACT ("NCPA")

"The Fair Debt Collection Practice Act (FDCPA) makes it unlawful for debt collectors to use 'any false, deceptive, or misleading representation or means in connection with the collection of any debt.'" *Freyermuth v. Credit Bureau Services, Inc.*, 248 F.3d 767, 770 (8th Cir. 2001), quoting 15 U.S.C. § 1692e. "The Act prohibits a debt collector from collecting any service charge 'unless such amount is expressly authorized by the agreement creating the debt or permitted by law'" *Id.*, quoting 15 U.S.C. § 1692f(1). "In addition, it is a violation of the Act to threaten to take 'any action that cannot legally be taken.'" *Id.*, quoting 15 U.S.C. § 1692e(5). It is also a violation of the FDCPA for a debt collector to misrepresent "the character, amount, or legal status of any debt" (15 U.S.C. § 1692e(2)(A))

-6-

or to use "any false representation or deceptive means to collect or attempt to collect any debt" (15 U.S.C. § 1692e(10)).

The NCPA provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce shall be unlawful."  Neb. Rev. Stat. § 59-1602 (Reissue 2004).

## DISCUSSION

### Collateral Estoppel and Res Judicata

The Defendants assert that the doctrines of "collateral attack" and *res judicata* bar Howard and Logue from re-litigating the issues of whether GCC's collection actions against them were time-barred and whether GCC misrepresented the character, amount or legal status of Howard's and Logue's debts.

"The doctrine of collateral estoppel, also known as issue preclusion, provides that 'when an issue of ultimate fact has been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in another lawsuit.'" *Chavez v. Weber*, 497 F.3d 796, 803 (8th Cir. 2007), citing *United States v. Brekke*, 97 F.3d 1043, 1049 (8th Cir. 1996).  "In the Eighth Circuit, issue preclusion has five elements: (1) the party sought to be precluded in the second suit must have been a party, or in privity with a party, to the original lawsuit; (2) the issue sought to be precluded must be the same as the issue involved in the prior action; (3) the issue sought to be precluded must have been actually litigated in the prior action; (4) the issue sought to be precluded must have been determined by a valid and final judgment; and (5) the determination in the prior action must

-7-

have been essential to the prior judgment." *Robinette v. Jones*, 476 F.3d 585, 589 (8th Cir. 2007).

"The doctrine of res judicata, or claim preclusion, bars the relitigation of a . . . claim if the prior judgment was a final judgment on the merits rendered by a court of competent jurisdiction, and if the same cause of action and the same parties or their privies were involved in both cases." *Baker v. Chisom*, 501 F.3d 920, 925 (8th Cir. 2007), citing *Murphy v. Jones*, 877 F.2d 682, 684 (8th Cir. 1989).

Plaintiffs Howard and Logue contend that those doctrines do not bar their claims in this proceeding because their "claims here are completely unrelated to Defendants' collection claims brought in state court." (Plaintiffs' Brief, Filing No. 112, p. 23). Howard and Logue state that they are not attempting to vacate the state court judgments, and that this proceeding is brought under the FDCPA and NCPA and therefore does not concern the same cause of action as the state court proceedings. (*Id.* pp. 23-27).

The issues of whether GCC's collection actions were time-barred, and whether GCC misrepresented the nature of the debts, may have been "involved in" the state-court collection proceedings, but those issues were not "actually litigated." As the Restatement (2d) Judgments, § 28, *comment e*, notes: "An issue is not actually litigated if the defendant might have interposed it as an affirmative defense but failed to do so . . . . In the case of a judgment entered by confession, consent, or default, none of the issues is actually litigated." Neither does the concept of claim preclusion apply to bar the Plaintiffs' actions in this case, because the causes of action raised in this proceedings are not the same as those raised in the state court collection action.

*Rooker-Feldman Doctrine*

The Defendants also contend that Howard's and Logue's actions should be dismissed pursuant to the doctrine announced in *Rooker v. Fidelity Trust Co., 263* U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983)(the "*Rooker-Feldman*" doctrine). "*Rooker-Feldman* . . . is a narrow doctrine, confined to 'cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.'" *Lance v. Dennis*, 546 U.S. 459, 464 (2006), quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).

Again, Howard and Logue note that they are not seeking to vacate the state-court judgments and are not asking this Court to review or reject those judgments. Instead, they are asserting that the Defendants' alleged practice of bringing time-barred collection actions and misrepresenting the nature and character of the debt violates the FDCPA and NCPA.

While it was possible, and may have been advisable, for Howard and Logue to raise as affirmative defenses in the state-court proceedings some of the issues they now raise in this action, their claims under the FDCPA and NCPA are not inextricably intertwined with the state-court actions. As noted above, the state-court default judgments did not involve the actual litigation of any issue underlying the Plaintiffs' claims in this case, and this action will not involve the review or rejection of those state-court judgments. [5]

---

[5] For a more exhaustive discussion of this issue, see *Knobbe v. Bank of America, N.A.*, No. 8:05cv489, 2007 WL 2822750, at *8 (D. Neb., Sept. 26, 2007).

## *Litigation Privilege and Absolute Immunity*

The Defendants assert that public policy favors the broad application of a common law litigation privilege, and that they should enjoy immunity from any suit based on the actions they took in the state-court proceedings.

The Supreme Court has recognized common-law immunity from subsequent liability for parties, witnesses, lawyers, juries and judges who are participants in the judicial process. *Briscoe v. LaHue*, 460 U.S. 325, 334-35 (1983). Such immunity helps to ensure that "'judges, advocates and witnesses can perform their respective functions without harassment or intimidation'" *Id.* at 335, quoting *Butz v. Economou*, 438 U.S. 478, 512 (1978). The Supreme Court recognized, however, that Congress may withdraw such immunity. *Id.* at 337-39.

In enacting the FDCPA, Congress effectively withdrew common-law litigation immunity for debt collectors, although initially exempting attorneys from the definition of "debt collector." Pub.L. 95-109, § 803(6)(F). In amending the FDCPA in 1986, Congress effectively withdrew common-law litigation immunity for lawyers who regularly engage in consumer-debt-collection activity through litigation. *Heintz v. Jenkins*, 514 U.S. 291, 294-99 (1995). See also *Nutter v. Messerli & Kramer, P.A.*, 500 F.Supp.2d 1219, 1223-24 (D. Minn. 2007). Accordingly, the Defendants are not entitled to summary judgment on the basis of any common-law litigation immunity.

## *Applicable Statute of Limitations for Collection Actions on Credit Card Debt*

The U.S. Court of Appeals for the Eighth Circuit has cited with approval the decision in *Kimber v. Fed. Fin. Corp.*, 668 F.Supp. 1480 (M.D. Ala. 1987), holding that a "debt

collector's filing of a lawsuit on an apparently time-barred debt, without having first determined after a reasonable inquiry that the limitations period had been tolled, was a violation of the FDCPA." *Freyermuth v. Credit Bureau Services, Inc.,* 248 F.3d 767, 771 (8th Cir. 2001).  The Eighth Circuit Court held that "in the absence of a threat of litigation or actual litigation, no violation of the FDCPA has occurred when a debt collector attempts to collect on a potentially time-barred debt that is otherwise valid." *Id.*  Conversely, it may be inferred from *Freyermuth* that a violation of the FDCPA *has* occurred when a debt collector attempts, through threatened or actual litigation, to collect on a time-barred debt that is otherwise valid.

In Nebraska, an "action upon a contract, not in writing, expressed or implied, or an action upon a liability created by statute, other than a forfeiture or penalty, can only be brought within four years."  Neb. Rev. Stat. § 25-206 (Reissue 1995).  An "action upon . . . . any agreement, contract, or promise in writing . . . can only be brought within five years . . . ."  Neb. Rev. Stat. § 25-205 (Cum. Supp. 2006)[6] Voluntary payment of any part of principal or interest tolls the statute of limitations and a new right of action accrues after each payment.  *Pick v. Pick*, 171 N.W. 2d 766, 767 (Neb. 1969); *Castellano v. Bitkower*, 346 N.W.2d 249, 252-53 (Neb. 1984).

The Defendants argue that GCC's state-court collection actions against the Plaintiffs were not barred by any statute of limitations, because (1) the credit card debts were based on written contracts, therefore subject to a five-year statute of limitations, and (2) each

---

[6] The language quoted from this statute was identical at all times relevant to these proceedings.

-11-

Plaintiff made one or more payments on her credit card account within five years before GCC commenced its state-court collection action.

The Plaintiffs note that GCC framed its state-court claims against the Plaintiffs as actions for "materials or services furnished," rather than claims based on written contracts. The Plaintiffs argue that GCC must be bound by the cause of action it asserted in the state-court, which is subject to a four-year statute of limitations. The Plaintiffs also assert that GCC lacks copies of any written cardholder agreements or other documents signed by the Plaintiffs, necessary to support an action based on written contract.

While the Nebraska Supreme Court has observed that the issues in a case are framed by the pleadings[7] and generally are limited to those pled,[8] the issue of *what* statute of limitations applied to GCC's state-court actions was never litigated in the Howard and Logue collection proceedings.  Just as Howard and Logue are not barred from asserting in this action that the collection proceedings were brought outside the applicable statute of limitations, the Defendants are not estopped from asserting in this action that their claims could have been brought on written contracts, governed by Nebraska's five-year statute of limitations.  With respect to the Jenkins collection proceeding, while the state court dismissed the collection action as outside the statute of limitations, it does not appear that the Defendants asked leave to amend their petition to assert a claim under written contract.

---

[7] *Sodoro, Daly & Sodoro, P.C. v. Kramer*, 679 N.W.2d 213, 218 (Neb. 2004).

[8] *Spanish Oaks v. Hy-Vee*, 655 N.W.2d 390, 404 (Neb. 2003).

It is arguable that actions based on credit card debt are governed by a five-year statute of limitations under Nebraska law. Federal law requires certain written disclosures in connection with consumer credit plans, which disclosures must be made no later than the delivery of the card, and which the consumer may accept by using the card. (15 U.S.C. § 1637). Defendants have filed a copy of the written Providian National Bank Visa Classic Account Agreement that they contend governed Ada Howard's credit card account (Filing No. 105-4), and contend that similar written account agreements govern the credit card debts incurred by Jenkins and Logue.

While some courts have viewed collections of third-party (bank) credit card debt as actions based on "written agreements,"[9] and some have considered them to be based on "open accounts,"[10] the Nebraska Supreme Court has not yet addressed the issue. In *Grant v. Williams*, 62 N.W.2d 532 (Neb. 1954), the Nebraska Supreme Court held that "[a] contract is unwritten if it cannot be wholly proved by a writing or writings. If there is anything that must be supplied by parol evidence to make it a binding obligation an action upon it is not one on a written instrument." *Id.* at 536 (finding the five-year statute of limitations inapplicable where the amount owed by the debtor to the creditor was not included in the written instrument). Based on that premise, the Nebraska Supreme Court could be expected to agree with the analysis of the Illinois appellate court in *Garber v. Harris Trust & Sav. Bank*, that ruled "a contract was not formed at the time of the issuance of the credit card; . . . a separate contract is created each time the card is used according

---

[9] See, e.g., *Harris Trust & Sav. Bank v. McCray*, 316 NE2d 209, 212 (Ill.App. 1974).

[10] See, e.g., *Carte Blanche Corp. v. Pappas*, 216 So.2d 917, 919 (La.App. 1968).

to the terms of the cardholder agreement at the time of such use." 432 N.E.2d 1309, 1311
(Ill.App. 1982). If the Plaintiffs did sign receipts promising to pay the credit card company
in accordance with the terms of written account agreements, a written contract was formed
each time such a receipt was signed. It would be the Defendants' burden, however, to
produce such documents or to prove "the former existence, execution, delivery, loss, and
contents of the instruments relied upon by clear, satisfactory, and convincing evidence."
*Castellano v. Bitkower*, 346 N.W.2d 249, 252 (Neb. 1984). In any event, it is arguable that
a five-year statute of limitations would apply in an action to collect credit card debt in
Nebraska, running from the date the debtor last signed a receipt promising to pay for a
charge, or running from the date the debtor last submitted a payment on the account,
whichever is later.

　　　If the Defendants had presented their state-court actions as ones based on written
contract, after having first determined after a reasonable inquiry that their claims were not
barred by the five-year statute of limitations, the ambiguity in Nebraska law on the subject
of which statute of limitations applies to credit card collection actions would shield the
Defendants from liability under the FDCPA. *Freyermuth*, 248 F.3d at 771; *Simmons v.
Miller*, 970 F.Supp. 661, 664-65 (S.D. Ind. 1997); *Almand v. Reynolds & Robin, P.C.*, 485
F.Supp.2d 1361, 1364-65 (M.D.Ga. 2007).

　　　The question remains: Did the Defendants knowingly assert causes of action
against the Plaintiffs that were barred by a statute of limitations, in order to collect charges
that were not permitted by law? The FDCPA prohibits a debt collector from collecting any
service charge "unless such amount is expressly authorized by the agreement creating the
debt or permitted by law." 15 U.S.C. § 1692f(1). If the Defendants intentionally framed

-14-

their state-court claims as ones for "materials or services furnished," knowing that the statute of limitations for such actions had expired, but in anticipation of collecting attorneys' fees or interest not otherwise available in an action brought under written contract, such conduct could be viewed as a "false, deceptive, or misleading representation or means in connection with the collection of any debt."  15 U.S.C. § 1692e.

### _Attorney Fees and Prejudgment Interest_

In Nebraska, "[a]s a general rule, attorney fees and expenses may be recovered in a civil action only where provided for by statute or when a recognized and accepted uniform course of procedure has been to allow recovery of attorney fees."  _Eicher v. Mid America Financial Inv. Corp._, 702 N.W.2d 792, 806 (Neb. 2005).

The Defendants contend that they were entitled to seek attorney fees in their state-court collection actions under Neb. Rev. Stat. § 25-1801 (Reissue 1995), which provides for the award of limited attorney fees in connection with certain claims for two thousand dollars or less for "(1) services rendered, (2) labor done, (3) material furnished, (4) overcharges made and collected, (5) lost or damaged personal property, (6) damage resulting from delay in transmission or transportation, (7) livestock killed or injured in transit, or (8) charges covering articles and service affecting the life and well-being of the debtor which are adjudged by the court to be necessaries of life . . . ."  _Id._  The Defendants assert that they did not know whether the state court would award a judgment greater than two thousand dollars in any collection action, and so they included a claim for attorney fees to preserve GCC's rights under the statute.  They also assert that GCC had an independent right to attorney fees as the assignee of the underlying written credit card agreements.

Plaintiffs contend that the Defendants misrepresented the nature of the Plaintiffs' debts as ones for "materials or services furnished," rather than credit-card accounts receivable, in order to deceive the state courts and the Plaintiffs and to collect impermissible fees. Plaintiffs also deny that GCC's collection actions were based on written agreements authorizing the collection of attorney fees, or that GCC was the assignee of any such agreements.

With respect to prejudgment interest, Defendants claim that they were entitled to seek prejudgment interest under Neb. Rev. Stat. § 45-104 (Reissue 2004), which provides:

> Unless otherwise agreed, interest shall be allowed at the rate of twelve percent per annum on money due on any instrument in writing, or on settlement of the account from the day the balance shall be agreed upon, on money received to the use of another and retained without the owner's consent, express or implied, from the receipt thereof, and on money loaned or due and withheld by unreasonable delay of payment. Unless otherwise agreed or provided by law, each charge with respect to unsettled accounts between parties shall bear interest from the date of billing unless paid within thirty days from the date of billing.

Defendants also assert that they could have sought prejudgment interest at a higher rate as assignees of the underlying written credit card agreements issued by national banks.

Plaintiffs counter that prejudgment interest is not allowed unless certain statutory prerequisites set forth in § 45-103.02(1) are satisfied, which the Defendants failed to do.[11] Plaintiffs also assert that the debts GCC sought to collect were not liquidated, because a reasonable controversy existed as to GCC's right to recover and the amount of the recovery, and therefore prejudgment interest was not available to GCC under § 45-104.

---

[11] The prerequisites set forth in section 45-103.02(1) apply to the accrual of prejudgment interest under section 45-103 on unliquidated claims, and not prejudgment interest under section 45-104.

-16-

Finally, Plaintiffs contest the Defendants' assertion that the debts were based on any written agreements or that GCC was an assignee of any such written agreements.

It may well be that written documentation exists demonstrating that GCC, as assignee of certain written credit card agreements, had viable claims against each Plaintiff which had not expired at the time the state-court actions were commenced and which included the right to collect attorney fees and prejudgment interest under the terms of the written agreements.  Even if such documentation is produced, genuine issues of material fact remain, including whether the Defendants framed their state-court causes of action as ones for "goods or services furnished," misrepresenting the character or legal status of the debt, to facilitate the collection of fees and prejudgment interest to which GCC was not entitled.

### Nebraska Consumer Protection Act

The Defendants argue that (1) the NCPA was an antitrust measure, not designed to govern specific transactions such as collection actions, and (2) the NCPA does not apply to transactions regulated by any agency acting under state or federal statutory authority.

This Court has recognized that "the CPA is essentially the state version of the Sherman Antitrust Act." *Triple 7, Inc. v. Intervet, Inc.*, 338 F.Supp.2d 1082, 1087 (D.Neb. 2004).  "Although the CPA provides both a private right of action and a public right, disputes that fall within the ambit of the CPA are unfair or deceptive trade practices that affect the public interest." *Id.*, citing *Nelson v. Lusterstone Surfacing Co.,* 605 N.W.2d 136 (Neb. 2000).

In construing the NCPA, the Nebraska Supreme Court has held "that to be actionable under the Act, the unfair or deceptive act or practice must have an impact upon

the public interest and that the Act is not available to redress a private wrong where the public interest is unaffected." *Arthur v. Microsoft Corp.*, 676 N.W.2d 29, 33 (Neb. 2004). The court concluded that "the Act allows any person who is injured by a violation of §§ 59-1602 to 59-1606 which directly or indirectly affects the people of Nebraska to bring a civil action to recover damages, " because "[t]he goal is to establish a uniform standard of conduct so that businesses will know what conduct is permitted and to protect the consumer from illegal conduct." *Id.* at 38.

In the Second Amended Complaint, the Plaintiffs allege that by filing and pursuing the collection of time-barred debts and misrepresenting the nature and character of the debts, the Defendants have engaged in unfair or deceptive acts or practices in violation of the CPA, and that their claim is brought "in the public interest." (Filing No. 63, ¶¶ 70-71). Genuine issues of material fact remain as to whether the Defendants did file and pursue collection lawsuits on time-barred debts, misrepresenting the nature and character of the debts, and whether the Defendants' actions affected the public interest or only the individual Plaintiffs.

With respect to the Defendants' argument that their actions are exempt from the CPA because their conduct is governed by other regulatory authorities, *i.e.*, the Nebraska Collection Agency Board and the Federal Trade Commission, this Court agrees with the analysis in *Hage v. General Service Bureau*, 306 F.Supp.2d 883 (D. Neb. 2003). "[P]articular conduct is not immunized from the operation of the Consumer Protection Act merely because the actor comes within the jurisdiction of some regulatory body, the immunity arises if the conduct itself is also regulated." *Id.* at 890, citing *Wrede v. Bank of*

-18-

*Gibbon*, 531 N.W.2d 523, 529 (Neb. 1995).  As in *Hage*, there has been no showing here that the specific acts allegedly committed by the Defendants are subject to regulation by the Nebraska Collection Agency Board or the Federal Trade Commission, so as to exempt those acts from the CPA.

## CONCLUSION

Genuine issues of material fact remain for trial, including but not limited to (1) whether the Defendants filed their state-court collection proceedings against one or more of the Plaintiffs, knowing that the claims were time-barred and without having first determined after reasonable inquiry that the limitations period had been tolled; (2) whether the Defendants misrepresented the nature of the Plaintiffs' debts as ones for "materials and services furnished," rather than credit card account receivables, in order to collect attorney fees to which Defendants were not entitled; and (3) whether the Defendants misrepresented the nature and amount of the Plaintiffs' debts in order to collect prejudgment interest to which Defendants were not entitled.  Accordingly, the Defendants' Motion for Summary Judgment will be denied.

IT IS ORDERED:

1. The Motion for Summary Judgment of Defendants General Collection Co. and Mark D. Stelk (Filing No. 103) is denied;

2. The Motion for Summary Judgment of Defendant Richard E. Gee (Filing No. 119) is denied.

Dated this 15th day of February, 2008.

BY THE COURT:

s/Laurie Smith Camp
United States District Judge