**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEBRASKA**

| | | |
|---|---|---|
| **CYNTHIA L. JENKINS, on behalf of herself and all others similarly situated, ADA HOWARD, and SANDRA LOGUE,** | ) | |
| **Plaintiffs,** | ) | **8:06CV743** |
| **vs.** | ) | **REPORT AND RECOMMENDATION** |
| **GENERAL COLLECTION CO., MARK D. STELK and RICHARD E. GEE,** | ) | **(CLASS CERTIFICATION)** |
| **Defendants.** | ) | |

This matter is before the magistrate judge for a report and recommendation on plaintiffs' Second Amended Motion for Class Certification (Doc. 134) and the defendants' related motion to supplement the record (Doc. 153). The court has considered the written materials submitted in conjunction with those motions, as well as the authorities cited in the parties' notices of recent decisions (Docs. 159 & 161).

## I. NATURE OF THE CASE

The plaintiffs allege that the defendants engaged in routine practices of filing lawsuits and attempting to collect judgments on time-barred debts, and in misrepresenting the nature and character of the debts by pleading that the consumers are indebted for "materials and services" when attempting to collect unauthorized charges. The plaintiffs contend the debts in question were, in fact, incurred primarily for personal, family, or household purposes. They seek relief in their Second Amended Complaint (Doc. 63) pursuant to the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. ("FDCPA"), and the Nebraska Consumer Protection Act, Neb. Rev. Stat. § 59-1601 *et seq*. ("NCPA"). The FDCPA expressly provides for class actions. *See* 15 U.S.C. § 1692k(a)(2)(B).

The plaintiffs contend that lawsuits such as the collection suits filed by GCC against them must be brought within four years of the date of the obligation to pay on the debt. *See* Neb. Rev. Stat. 25-206.[1] They contend the defendants are liable under the FDCPA, *see* 15 U.S.C. § 1692e, for engaging in the practice of filing or proceeding with collection lawsuits on time-barred debts and collecting any amounts awarded as a result of such lawsuits. Plaintiffs also complain that GCC routinely misrepresents the nature and character of the debts by pleading that the consumers are indebted in the original amounts for "materials and services." Finally, plaintiffs complain that the defendants routinely engage in the practice of collecting unauthorized charges, i.e., interest, fees, and costs, which are not permitted by law, in violation of 15 U.S.C. § 1692f.[2]

The factual bases for these claims are as follows.

**A. Sandra Logue**

On April 3, 2006, GCC sued Logue in the Douglas County Court (Case No. CI06-6453), seeking to collect the balance due on Logue's BANKFIRST credit card for "materials and or services furnished" in the original amount of $1,418.99, plus prejudgment interest, court costs, sheriff fees, certified mail expenses, attorney fees, and interest on the judgment as provided by law. The last activity on the account occurred more than four years prior to defendants' filing of the collection suit in county court. On September 20, 2006, GCC applied for entry of default judgment in an amount

[1]Section 25-206 provides:

> **Actions on oral contracts or statutory liabilities.** An action upon a contract, not in writing, expressed or implied, or an action upon a liability created by statute, other than a forfeiture or penalty, can only be brought within four years.

In response, the defendants contend the plaintiffs' credit card agreements are written contracts subject to a five-year statute of limitations pursuant to Neb. Rev. Stat. § 25-205.

[2]15 U.S.C. § 1692f(1) prohibits "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

which included interest and attorney's fees. The county court entered a default judgment against Logue for $1,640.70, together with interest as allowed by law, court costs of $78.00 and attorney fees of $169.00. Logue did not appeal from the judgment and has made some payment toward the judgment.

The parties' briefs reflect that on March 1, 2008, Ms. Logue and her husband filed a Chapter 13 Petition in the U.S. Bankruptcy Court for the District of Nebraska, Case No. 08-80512. The petition lists "General Collection Co, c/o Richard E Gee" as a debtor. Logue's interest in this lawsuit is listed on Schedule B as a contingent or unliquidated claim with an estimated value of less than $5,000.

**B. Ada Howard**

On October 31, 2005, GCC sued Howard in the Douglas County Court (Case No. CI06-6453), seeking to collect the balance due on Howard's PROVIDIAN and FIRST CONSUMER CARD credit cards for "materials and or services furnished" in the original amounts of $3,045.30 and $608.15, respectively. GCC also sought prejudgment interest, court costs, sheriff fees, certified mail expenses, attorney fees, and interest on the judgment as provided by law. Logue states that the debts were incurred primarily for personal, family, or household purposes. The last activity on the account occurred more than four years prior to defendants' filing of the collection suit in county court. On December 21, 2005, GCC applied for a default judgment. On May 29, 2006 GCC filed a motion for an order *nunc pro tunc* to increase the amount of the judgment by $2,010.00. An amended default judgment was entered on June 22, 2006, in the amount of $5,274.71, together with interest as allowed by law and court costs of $46.88. Howard did not appeal from the judgment and has made some payment toward the judgment.

**C. Cynthia Jenkins**

On November 1, 2004, GCC sued Jenkins in the Douglas County Court (*General Collection Co. v. Jenkins*, Case No. CI04-20215), seeking to collect the balance due on Jenkins' First USA credit card for "materials and or services furnished," in the original amount of $5,795.54, plus prejudgment interest, court costs, sheriff fees, certified mail expenses, attorney fees, and interest on the judgment as provided by law. Jenkins contends that the debt was incurred primarily for personal, family, or household purposes. Jenkins filed a *pro se* answer in county court requesting that the suit be dismissed because the four-year statute of limitations had passed. On February 11, 2005, defendant Stelk signed and filed an "Affidavit for Judgment" to the effect that the balance due "as stated in the Petition" was $6635.02. GCC did not respond to Jenkins' statute of limitations defense, and the county court dismissed the lawsuit based on the expiration of the statute of limitations.

GCC appealed the county court's decision to the Douglas County District Court, which remanded the matter to the county court for an evidentiary hearing on the statute of limitations issue. Jenkins' attorneys then filed a motion for summary judgment on grounds that the statute of limitations had expired, together with an affidavit signed by Jenkins alleging that she did not make any payments on the First USA account "since before September of 2000." After a hearing on the summary judgment motion (during which GCC offered no evidence), the county court granted the motion and dismissed the lawsuit, specifically finding that the statute of limitations had expired.

At the time Judge Smith Camp denied the defendants' motions for summary judgment in this case (*see* Doc. 127) GCC had obtained documents, which Jenkins could not rebut, demonstrating that Jenkins in fact made six payments on the subject debt in 2001-02, with one check dated February 3, 2002 (*see* Doc. 85-6, p. 5/12). Based on this information, GCC moved to re-open the

county court collection action. It is the defendants' position that Jenkins obtained the judgment of dismissal based on false representations to the county court.

Defendants GCC and Stelk move the court for permission to supplement the record to include the May 22, 2008 order of the Douglas County Court vacating its prior judgment . (Doc. 153). The exhibit offered by the defendants (Doc. 154-2) shows that on May 22, 2008, the county court vacated its prior summary judgment and granted Jenkins 30 days to answer. The plaintiffs object to supplementing the record.

## II. LEGAL ANALYSIS

As Judge Smith Camp previously held (Doc. 127 at p. 6/19), published as *Jenkins v. General Collection Co.*, 538 F. Supp. 2d 1165, 1170 (D. Neb. 2008),

> "The Fair Debt Collection Practice Act (FDCPA) makes it unlawful for debt collectors to use 'any false, deceptive, or misleading representation or means in connection with the collection of any debt.'" *Freyermuth v. Credit Bureau Services, Inc.*, 248 F.3d 767, 770 (8th Cir. 2001), quoting 15 U.S.C. § 1692e. "The Act prohibits a debt collector from collecting any service charge 'unless such amount is expressly authorized by the agreement creating the debt or permitted by law.'" *Id.*, quoting 15 U.S.C. § 1692f(1). "In addition, it is a violation of the Act to threaten to take 'any action that cannot legally be taken.'" *Id.*, quoting 15 U.S.C. § 1692e(5). It is also a violation of the FDCPA for a debt collector to misrepresent "the character, amount, or legal status of any debt" (15 U.S.C. § 1692e(2)(A)) or to use "any false representation or deceptive means to collect or attempt to collect any debt." (15 U.S.C. § 1692e(10)).
>
> The NCPA provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce shall be unlawful." Neb. Rev. Stat. § 59-1602 (Reissue 2004).

In this case, the issues remaining for trial are (1) whether the defendants filed state-court collection proceedings against one or more of the plaintiffs, knowing that the claims were time-barred and without having first determined after reasonable inquiry that the limitations period

had been tolled[3]; (2) whether the defendants misrepresented the nature of the plaintiffs' debts as ones for "materials and services furnished," rather than credit card account receivables, in order to collect attorney fees to which defendants were not entitled; and (3) whether the defendants misrepresented the nature and amount of the plaintiffs' debts in order to collect prejudgment interest to which defendants were not entitled.

In this context, pursuant to Fed. R. Civ. P. 23(a) and 23(b)(2) and/or 23(b)(3), plaintiffs request the certification of two classes, each with two subclasses:

(1) the **"Statute of Limitations Class"** consisting of

(a) all Nebraska residents
(b) against whom a GCC collection lawsuit for materials and/or services furnished was pending or proceeding;
(c) in an attempt to collect a credit card debt incurred primarily for personal, family or household purposes, where
(d) the alleged indebtedness arose more than four years before the filing of defendants' collection action.

- Subclass A includes the FDCPA claims for the one year prior to the filing of the complaint in this action through the date of class certification.
- Subclass B includes the NCPA claims for the four years prior to the filing of the complaint in this action through the date of class certification.
- Plaintiffs Howard and Logue are the proposed class representatives.

[3]Under Nebraska law, a statute of limitations defense is an affirmative defense which must be raised in a pleading or in a motion pursuant to Rule 12(b)(6) of the Nebraska Rules of Pleading in Civil Actions; otherwise, the defense is considered waived. *See Carruth v. State*, 271 Neb. 433, 435, 712 N.W.2d 575, 578 (2006). A statute of limitations does not serve to eliminate the debt; it merely limits the judicial remedies available. Thus, "in the absence of a threat of litigation or actual litigation, no violation of the FDCPA has occurred when a debt collector attempts to collect on a potentially time-barred debt that is otherwise valid." *Freyermuth v. Credit Bureau Services, Inc.*, 248 F.3d at 771. As Judge Smith Camp previously noted, "it may be inferred from *Freyermuth* that a violation of the FDCPA *has* occurred when a debt collector attempts, through threatened or actual litigation, to collect on a time-barred debt that is otherwise valid." Filing 127 at p. 11/19.

(2) the **"Materials and/or Services Furnished Class"** consisting of

(a) all Nebraska residents
(b) against whom a GCC collection lawsuit regarding a credit card debt was pending or proceeding (c) for an "original amount" for "materials and or services furnished" in an attempt to collect a debt incurred primarily for personal, family, or household purposes, where
(d) recovery was sought for any amounts other than for the "original amount" charged to the credit card. Such additional recovery includes but is not limited to attorneys' fees, finance charges, or pre-judgment interest.

- Subclass A includes the FDCPA claims for the one year prior to the filing of the complaint in this action through the date of class certification.

- Subclass B includes the NCPA claims for the four years prior to the filing of the complaint in this action through the date of class certification.

- Plaintiffs Jenkins, Logue and Howard are the proposed class representatives.

The defendants oppose class certification, arguing that the plaintiffs cannot establish the requirements of Fed. R. Civ. P. 23(a), 23(b)(2) or 23(b)(3)[4].

---

[4]Rule 23 provides, in relevant part:

(a) Prerequisites. One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
(1) the class is so numerous that joinder of all members is impracticable;
(2) there are questions of law or fact common to the class;
(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
(4) the representative parties will fairly and adequately protect the interests of the class.

(b) Types of Class Actions. A class action may be maintained if Rule 23(a) is satisfied and if:

* * * *

(2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or
(3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
(A) the class members' interests in individually controlling the prosecution or defense of

**A. Burden of Proof**

A plaintiff moving for class certification has the burden of showing that the class should be certified and that the requirements of Rule 23 are met. *Clayborne v. Omaha Pub. Power Dist.*, 211 F.R.D. 573, 479 (D. Neb. 2002) (citing *Coleman v. Watt*, 40 F.3d 255, 258-59 (8th Cir. 1994)).

> In determining whether the plaintiffs have met this burden of proof, the court may not consider the factual merits or weaknesses of plaintiffs' underlying claims. *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156 (1974). However, a class determination "generally involves considerations that are 'enmeshed in the factual and legal issues comprising the plaintiff's cause of action.'" *General Telephone Co. of the Southwest v. Falcon,* 457 U.S. 147 (1982) (citing *Coopers & Lybrand v. Livesay,* 437 U.S. 463 (1978)).
>
>> Sometimes the issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim, and sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question.
>
> *Falcon*, 457 U.S. at 160....

*Clayborne*, 211 F.R.D. at 480 (parallel citations omitted). A class action may only be certified if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied. *See Falcon*, 457 U.S. at 161. Although the court's analysis must be rigorous, Rule 23 confers "'broad discretion to determine whether a class should be certified, and to revisit that certification throughout the legal proceedings before the court.'" *Dukes v. Wal-Mart Stores, Inc.*, 222

---

separate actions;
(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
(D) the likely difficulties in managing a class action.

F.R.D. 137, 143 (N.D. Cal. 2004) (quoting *Armstrong v. Davis*, 275 F.3d 849, 872, n.28 (9th Cir. 2001)).

**B. Requirements of Fed. R. Civ. P. 23(a)**

Rule 23(a) requires that the plaintiffs make a preliminary showing that (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. These prerequisites are commonly referred to as "'numerosity, commonality, typicality, and adequacy of representation.'" *Clayborne*, 211 F.R.D. at 580 (quoting *General Tel. Co. v. EEOC*, 446 U.S. 318, 330 (1980)), and are designed to limit class claims to those "fairly encompassed" by the named plaintiffs' individual claims. *Falcon*, 457 U.S. at 156.

**1. Numerosity–Both Classes**

Rule 23(a) requires the party seeking certification to demonstrate that the proposed class is "'so numerous that joinder of all members is impracticable.'" *Caroline C. v. Johnson*, 174 F.R.D. 452, 462 (D. Neb. 1996) (quoting *Paxton v. Union Nat'l Bank*, 688 F.2d 552, 559 (8th Cir. 1982), *cert. denied,* 460 U.S. 1083 (1983)).

> "In assessing impracticability the court should exercise common sense and give due consideration to concerns of judicial economy and access to the legal system." ... Plaintiffs need not show that joinder is impossible, but that joining all members of the class would be difficult.... No absolute or arbitrary number satisfies the numerosity requirement....
>
> > Certainly, where the class is very large–for example numbering in the hundreds–joinder will be impracticable.... In light or prevailing precedent, the difficulty inherent in joining as few as 40 class members should raise a presumption that joinder is impracticable, and the plaintiff whose class

> is that large or larger should meet the test of Rule 23(a)(1) on that fact alone.
>
> Newberg, *Class Actions* § 3.05, at 3-25*; see also Robidoux* [*v. Celani*, 987 F.2d 931, 936 (2nd Cir. 1993)]; *Lockwood* [*Motors, Inc. v. General Motors Corp.,* 162 F.R.D. 569, 574 (D. Minn. 1995)], 3B *Moore's Federal Practice* § 23.05[1], at 23-143-45 (2d ed. 1995) ("while there are exceptions, numbers in excess of forty, particularly numbers in excess of one hundred ... have sustained the [numerosity] requirement").

*Caroline C. v. Johnson*, 174 F.R.D. at 462-63 (citations omitted).

In this case, the plaintiffs' attorneys have examined county court records throughout the State of Nebraska, yielding evidence that the requirement of numerosity has been met. *See* Docs. 51, 70 & 136. The defendants do not challenge plaintiffs' data collection methods, conclusions, or their extrapolations based on the data collected. Since the defendants do not appear to dispute that numerosity exists, the court finds that the numerosity requirement is satisfied as to the classes as a whole and as to the individual proposed subclasses.

**2. Commonality**

The commonality and typicality requirements address the sufficiency of the nexus between the legal claims of the named class representatives and those of individual class members to warrant class certification. Traditionally, "commonality" refers to the group characteristics of the class as a whole, while "typicality" refers to the individual characteristics of the named plaintiffs in relation to the class. *See Piazza v. EBSCO Indus., Inc.*, 273 F.3d 1341, 1346 (11th Cir. 2001); *Dukes v. Wal-Mart Stores, Inc.*, 222 F.R.D. at 144-45.

"Rule 23(a)(2) does not require that all questions of law or fact be common. The test is qualitative rather than quantitative–one significant issue common to the class may be sufficient to warrant certification." *Dukes*, 222 F.R.D. at 145. Thus, to satisfy the requirement of "commonality,"

there must be least one issue whose resolution will affect all or a significant number of the putative class members. *McClain v. Lufkin Indus., Inc.*, 187 F.R.D. 267, 279 (E.D. Tex. 1999). In other words, commonality "generally exists when the defendant has engaged in 'standardized conduct' towards the members of the proposed class." *Parkis v. Arrow Fin. Servs., LLS*, 2008 WL 94798 at *4, Case No. 07 C 410 (N.D. Ill., Jan. 8, 2008) (quoting *Smith v. Nike Retail Servs., Inc.*, 234 F.R.D. 648 (N.D. Ill. 2006)).

***a. Commonality–Statute of Limitations Class***

Regarding the proposed Statute of Limitations Class, Judge Smith Camp explained in her order on summary judgment that actions based on credit card debt may be governed by a five-year statute of limitations under Nebraska law, rather than the a four-year statute of limitations the plaintiffs claim to be applicable.

> In Nebraska, an "action upon a contract, not in writing, expressed or implied, or an action upon a liability created by statute, other than a forfeiture or penalty, can only be brought within four years." Neb. Rev. Stat. § 25-206 (Reissue 1995). An "action upon ... any agreement, contract, or promise in writing ... can only be brought within five years...."Neb. Rev. Stat. § 25-205 (Cum. Supp. 2006). Voluntary payment of any part of principal or interest tolls the statute of limitations and a new right of action accrues after each payment. *Pick v. Pick*, 184 Neb. 716, 171 N.W.2d 766, 767 (1969); *Castellano v. Bitkower*, 216 Neb. 806, 346 N.W.2d 249, 252-53 (1984).
>
> The Defendants argue that GCC's state-court collection actions against the Plaintiffs were not barred by any statute of limitations, because (1) the credit card debts were based on written contracts, therefore subject to a five-year statute of limitations, and (2) each Plaintiff made one or more payments on her credit card account within five years before GCC commenced its state-court collection action.

538 F. Supp. 2d at 1172-73. The Defendants are not estopped from asserting in this action that their claims could have been brought on written contracts, governed by Nebraska's five-year statute of limitations. *Id*. at 1173. The Nebraska Supreme Court has not specifically determined whether

collections of third-party (bank) credit card debt are actions based on "written agreements," or actions based on "open accounts."

> In *Grant v. Williams*, 158 Neb. 107, 62 N.W.2d 532 (1954), the Nebraska Supreme Court held that "[a] contract is unwritten if it cannot be wholly proved by a writing or writings. If there is anything that must be supplied by parol evidence to make it a binding obligation an action upon it is not one on a written instrument." *Id*. at 536 (finding the five-year statute of limitations inapplicable where the amount owed by the debtor to the creditor was not included in the written instrument). Based on that premise, the Nebraska Supreme Court could be expected to agree with the analysis of the Illinois appellate court in *Garber v. Harris Trust & Sav. Bank*, that ruled "a contract was not formed at the time of the issuance of the credit card; ... a separate contract is created each time the card is used according to the terms of the cardholder agreement at the time of such use." 104 Ill. App. 3d 675, 60 Ill. Dec. 410, 432 N.E.2d 1309, 1311 (1982). If the Plaintiffs did sign receipts promising to pay the credit card company in accordance with the terms of written account agreements, a written contract was formed each time such a receipt was signed. It would be the Defendants' burden, however, to produce such documents or to prove "the former existence, execution, delivery, loss, and contents of the instruments relied upon by clear, satisfactory, and convincing evidence." *Castellano v. Bitkower*, 216 Neb. 806, 346 N.W.2d 249, 252 (1984). In any event, it is arguable that a five-year statute of limitations would apply in an action to collect credit card debt in Nebraska, running from the date the debtor last signed a receipt promising to pay for a charge, or running from the date the debtor last submitted a payment on the account, whichever is later.

538 F. Supp. 2d at 1174.

Commonality is generally not defeated by the need to make individualized inquiries to ascertain class membership.

> The existence of individual facts and circumstances will not defeat commonality so long as the plaintiffs allege harm under the same legal theory.... Nevertheless, "[c]ommonality will not be found where the alleged common issues can only be resolved by making factual determinations that will be different for each class member." .... Courts have held that the commonality requirement cannot be met "where Plaintiffs' proposed common questions are inherently individualized, requiring inquiry into the particular circumstances of each [Plaintiff] ...." .... In other words, "[t]he common issue must significantly advance the litigation.

*Allen v. Holiday Universal*, 249 F.R.D. 166, 176 (E.D. Pa. 2008) (citations omitted).

After carefully considering the issues remaining in this lawsuit, the court does not believe the plaintiffs have demonstrated commonality. The point was recently illustrated in *Parkis v. Arrow Fin. Servs., LLS*, 2008 WL 94798, Case No. 07 C 410 (N.D. Ill., Jan. 8, 2008), in which the plaintiff sought to certify two classes of plaintiffs in a lawsuit alleging that the defendants violated the FDCPA by deceptively collecting time-barred debts and suing the debtors in an improper venue. The court held that the commonality element was not met due to the individualized inquires that would be required:

> Under Rule 23(a)(2), there must be a question of law or fact common to the class. Commonality generally exists when the defendant has engaged in "standardized conduct" towards the members of the proposed class. *Smith v. Nike Retail Servs., Inc.*, 234 F.R.D. 648, 2006 WL 715788, at *4 (N.D. Ill. Mar. 22, 2006). "A common nucleus of operative fact is usually enough to satisfy the commonality requirement of Rule 23(a)(2). *Rosario v. Livaditis*, 963 F.2d 1013, 1017 (7th Cir. 1992). However, if resolving the common legal issue depends on factual determinations that would require individualized inquiry for each class member, commonality is not met. *See Sparano v. Southland Corp.*, 1996 U.S. Dist. LEXIS 17485, 1996 WL 681273 (D. Ill. 1996). In the present case, Plaintiff asserts that the "common nucleus of operative fact" is the "standardized conduct" of the Defendants collecting on time-barred debts. Specifically, Plaintiff claims that Defendants sued for debts after the five year statute of limitations period had expired and omitted information from court filings regarding the date when the alleged failure to pay occurred, in order to conceal the statute of limitation problem, in violation of the FDCPA. Defendants contend that the class definition requires an individual inquiry into the information and documents for each class member. Defendants claim that because Arrow and BHLM sued on debts from Fleet Visa, Discover, Chase and Bank of America, the documents for each class member will be different depending on the different credit card companies. It is unclear from the evidence presented why documentation from the different credit card companies would be relevant to the statute of limitations inquiry in the present case. However, in the present suit, Plaintiff and Defendants dispute the fact that Plaintiff's Visa debt was beyond the five year statute of limitation.... In order to resolve this question of fact, this court would have to look into the payment history of each putative class member to determine whether the last payment date or charge-off date was more than five years prior to the filing of the debt-collection suit. Because the payment timing and history will be different for each putative class member, this would involve an individualized

> inquiry for each potential member. Thus, the commonality requirement is not met, and class certification is denied.

*Parkis*, 2008 WL 94798 at *4.

In the case at bar, the applicable statute of limitations is in dispute. The issue cannot be resolved without determining whether each debtor and creditor entered into a "written contract." Under Nebraska law, the voluntary payment of any part of principal or interest tolls the statute of limitations and a new right of action accrues after each payment. Judge Smith Camp also observed in her order on summary judgment that

> It is arguable that actions based on credit card debt are governed by a five-year statute of limitations under Nebraska law. Federal law requires certain written disclosures in connection with consumer credit plans, which disclosures must be made no later than the delivery of the card, and which the consumer may accept by using the card. (15 U.S.C. § 1637). Defendants have filed a copy of the written Providian National Bank Visa Classic Account Agreement that they contend governed Ada Howard's credit card account (Filing No. 105-4), and contend that similar written account agreements govern the credit card debts incurred by Jenkins and Logue.

538 F. Supp. 2d at 1173.

It appears to this court that, as in *Parkis*, the payment timing and history will be different for each putative class member, requiring an individualized inquiry for each potential member of the proposed class in order to determine which statute of limitations applies and when it began to run.

The court finds that the plaintiffs have not satisfied the element of commonality as to the proposed "Statute of Limitations Class" and recommends that the Second Amended Motion for Class Certification be denied as to the proposed "Statute of Limitations Class."

***b. Commonality–Materials and/or Services Furnished Class***

GCC framed its state-court claims against the plaintiffs as actions for "materials or services furnished." Plaintiffs contend that each member of the proposed Materials and/or Services Furnished

class was sued by the defendants using standard form complaints that misrepresented the nature and character of the alleged credit card debts so that the defendants could recover statutory attorney fees, costs, and prejudgment interest pursuant to Neb. Rev. Stat. §§ 25-1801 (applicable to claims involving $2,000 or less) and § 45-104 (allowing interest of 12% per annum from the date of billing, "unless otherwise agreed").

The issue framed by Judge Smith Camp as to this proposed class is whether the defendants "framed their state-court causes of action as ones for 'goods or services furnished,' misrepresenting the character or legal status of the debt, to facilitate the collection of fees and prejudgment interest to which GCC was not entitled." 538 F. Supp. 2d at 1175-76.

The defendants asserted on summary judgment that they did not know whether the state court would award a judgment greater than two thousand dollars in any collection action, so they typically included a claim for attorney fees to preserve GCC's rights under § 25-1801. GCC also asserts an independent right to attorney fees as the assignee of the underlying written credit card agreements, and the right to seek prejudgment interest at a higher rate as assignees of the underlying written credit card agreements issued by national banks. These issues will require individualized third-party discovery. The court agrees with the defendants that membership for this proposed class cannot be ascertained by merely reviewing the pleadings filed by GCC and its attorneys in state court. As Judge Smith Camp noted, "It may well be that written documentation exists demonstrating that GCC, as assignee of certain written credit card agreements, had viable claims against each Plaintiff which had not expired at the time the state-court actions were commenced and which included the right to collect attorney fees and prejudgment interest under the terms of the written agreements." 538 F. Supp. 2d at 1175.

The court finds that the plaintiffs have not satisfied the element of commonality and recommends that the Second Amended Motion for Class Certification be denied as to the proposed Materials and/or Services Furnished Class.

**3. Typicality–Both Classes**

Typicality encompasses the question of the named plaintiffs' standing, because without individual standing to raise a legal claim, a named representative does not have the requisite typicality to raise the same claim on behalf of a class. *Piazza v. EBSCO Indus., Inc.*, 273 F.3d at 1346.

> A class representative "must be part of the class and 'possess the same interest and suffer the same injury' as the class members." *Falcon,* 457 U.S. at 156. "Typicality under Rule 23(a)(3) means that there are 'other members of the class who have the same or similar grievances as the plaintiff.'" *Alpern v. Utilicorp United, Inc.,* 84 F.3d 1525, 1540 (*quoting Donaldson v. Pillsbury Co.*, 554 F.2d 825, 830 (8th Cir.), *cert. denied,* 434 U.S. 856 (1977)). The burden is met as long as other members of the class possess claims similar to those of the named plaintiffs. *Alpern,* 84 F.3d at 1540. "Factual variations in the individual claims will not normally preclude class certification if the claim arises from the same event or course of conduct as the class claims, and gives rise to the same legal or remedial theory." *Id.*; *Robidoux,* 987 F.2d at 936; *In re Potash Antitrust Litigation,* 159 F.R.D. 682, 690 (D. Minn.1995); *Lockwood,* 162 F.R.D. at 575.

*Caroline C. v. Johnson*, 174 F.R.D. at 464-65.

For the reasons discussed above in conjunction with the element of commonality, the court finds that the plaintiffs have not satisfied the element of typicality.

**4. Adequacy of Representation**

"Adequacy of representation" means that the class representatives have common interests with unnamed class members and will vigorously prosecute the interests of the class through

qualified counsel[5]. *Piazza v. EBSCO Indus., Inc.*, 273 F.3d at 1346.

> The adequacy of representation requirement serves two functions. Like the commonality and typicality requirements, it assures that shared interests between the representative plaintiffs and the class as a whole are present, but it also functions to insure the absence of conflicts. *Amchem* [*Prods., Inc. v. Windsor*, 521 U.S. 591 (1997)]. To serve as representatives, named plaintiffs must have common interests with class members, a lack of interests adverse to class members, and must vigorously prosecute the interests of the class through qualified counsel. *East Texas Motor Freight System Inc. v. Rodriguez,* 431 U.S. 395, 403 (1977). This standard requires similarity, not identity, of interests. *Carpenter v. Stephen F. Austin State University,* 706 F.2d 608 (5th Cir. 1983).
>
> The requirement of common interests with the class does not preclude unique interests, only adverse interests. ...

*McClain v. Lufkin Indus.*, 187 F.R.D. at 281 (parallel citations omitted); *see also Dukes v. Wal-Mart Stores, Inc.*, 222 F.R.D. at 168.

Since the court has already determined that the plaintiffs have not satisfied the elements of commonality and typicality, the court also finds that the plaintiffs have not demonstrated that they have common interests with unnamed class members.

## III. CONCLUSION AND RECOMMENDATION

Based on the court's review of the record, together with the legal issues presented in this matter, the court finds that the plaintiffs have not met their burden of showing that the proposed classes should be certified. Specifically, the court finds that the plaintiffs have not made the preliminary showing required by Fed. R. Civ. P. Rule 23(a) as to commonality, typicality or adequacy of representation. The plaintiffs' claims are premised on the actual filing and merits of individual lawsuits in state court, not on a debt collector's mass-mailing of Dunning letters. *Compare Evans v. American Credit Sys., Inc.*, 222 F.R.D. 388 (D. Neb. 2004). While each plaintiff

[5]There appears to be no dispute as to the qualifications of plaintiffs' counsel.

contends the state court actions were time-barred and misrepresented the character or legal status of the alleged debts, those issues cannot be resolved without individual inquiry.

The court further finds that the defendants' related motion to supplement the record (Doc. 153) should be and is hereby granted. A separate order will be entered to this effect.

**IT IS RECOMMENDED** that plaintiffs' Second Amended Motion for Class Certification (Doc. 134) be denied.

> Pursuant to NECivR 72.3, a party may object to a this Report and Recommendation by filing an "Objection to Report and Recommendation" within ten (10) business days after being served with the recommendation. The statement of objection shall specify those portions of the recommendation to which the party objects and the basis of the objection. The objecting party shall file contemporaneously with the statement of objection a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed de novo and a different disposition made.

**DATED July 29, 2008.**

**BY THE COURT:**

**s/ F.A. Gossett**
**United States Magistrate Judge**